**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PAUL JONES, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 07-0738 (WHW) |
| | : | |
| LUIS MARIN and ANTHONY LAHANIS, | : | |
| | : | |
| Defendants and | : | |
| Third Party Plaintiffs, | : | |
| | : | |
| v. | | |
| | | |
| DERREC JONES, WALTER LEASING and | | |
| WALTER BROKERAGE, | | |
| | | |
| Third Party Defendants. | | |

**Walls, Senior District Judge**

This action arises out of a sale of a shipping and freight company from plaintiff Paul

Jones to defendants Luis Marin[1] and Anthony Lahanis.  Plaintiff alleges breach of contract claims

against defendants.  Defendants assert breach of contract, bad faith, unfair competition, tortious

interference and breach of the duty of loyalty claims against plaintiff and third party defendants.

---

[1]  Marin's counsel advised the Court that Marin filed a petition for bankruptcy in the
Eastern District of New York on September 11, 2007.  (Dkt. Entry No. 23.)  The Court
administratively dismissed Marin from this case without prejudice on October 1, 2007.  (Dkt
Entry No. 24.)  Marin has not made a motion to re-enter the case.  Although the Court may refer
to Marin and his affidavit, this Opinion only resolves the motion as it relates to Defendant
Lahanis.

**NOT FOR PUBLICATION**

Plaintiff and third party defendants now move for summary judgment.  Pursuant to Fed. R. Civ.

P. 78, the Court decides the motion without oral argument.  The motion is granted.

## FACTS AND PROCEDURAL BACKGROUND[2]

On August 7, 2006, defendants Marin and Lahanis agreed to purchase Bulldog Lines,

Inc., a New Jersey corporation engaged in the business of shipping containers and freight, from

Paul Jones for $550,000.  (Affidavit of Ryan Milun in Support of Motion for Summary Judgment

("Milun Aff.") Ex. B.)  The contract of sale, drafted by Jones' counsel, called for defendants to

pay $200,000 immediately to plaintiff, the remaining $350,000 by a promissory note held by Paul

Jones.  (Id.; Pl.'s Statement of Undisputed Facts ("Pl. Facts") ¶ 8.)  The note was payable over

three years by monthly payments of approximately $10,000, with first payment due on February

1, 2007.  (Milun Aff. Ex. B.)  Under the promissory note's default clause, the entire outstanding

amount of the note would come due at plaintiff's option if the defendants defaulted on their

payments.  (Id.)  Defendant Lahanis provided the initial payment of $200,000 but took no part in

the running of Bulldog.  (Pl. Facts ¶¶ 11, 12.)  Defendant Marin was responsible for the day-to-

day operations.  (Id. ¶ 12.)

The contract of sale required Jones to "provide the services of the dispatcher for six

months or until the dispatcher is released from employment by the Buyers, whichever comes first

---

[2]  Defendant Lahanis did not respond to plaintiff's Rule 56.1 Statement of Undisputed
Facts.  Instead, he included a "statement of disput'ed material facts" consisting of mostly
irrelevant facts in his opposition brief.  Pursuant to L. Civ. R. 56.1, the Court accepts as true all
material facts contained in plaintiff's Rule 56.1 statement if they are supported by evidence and
not contradicted in defendant's opposing evidence.  See Hill v. Algor, 85 F. Supp. 2d 394, 408
n.26 (D.N.J. 2000).

**NOT FOR PUBLICATION**

or, in the alternative, Paul Jones will continue to provide his ordinary services to [Bulldog] for six months." (Milun Aff. Ex. B.)  The dispatcher at time of sale was Derrec Jones, Jones' son. (Milun Aff. Ex. L at 44:15-17.)  Derrec Jones worked for Bulldog for six months following the sale.  (Id.)  Paul Jones also stayed at Bulldog to help the new owners with the transition. (Affidavit of Paul Jones ("Jones Aff.") ¶ 5.)  In October 2006, he gave notice to Marin and left the company.  (Id. ¶ 12.)

In November 2006, Jones started a new business called Walter Leasing.  (Id. ¶ 13.)  Jones began doing work for previous or current customers of Bulldog although he claims that he was careful to avoid competing with Bulldog and took on jobs which did not compete with Bulldog. (Id. ¶¶ 14-17.)  Bulldog, in the meantime, began experiencing cash flow problems and eventually ceased operations.  (Defs.' Counter-Statement of Facts ("Def. Facts") ¶¶ 99-100.)  Defendants principally blame plaintiff for the failure of Bulldog alleging that Jones failed to deliver Bulldog free and clear of liens and encumbrances and that he "illegally" solicited Bulldog's customers. (Id. ¶¶ 45, 85-86, 99.)

On February 13, 2007, Paul Jones filed suit against Marin and Lahanis.  Paul Jones alleges that defendants missed their first promissory note payment, which had been due on February 1, 2007.  Invoking the default clause, he seeks $350,000.00 in damages and interest.  In response, Marin and Lahanis asserted counterclaims against Paul Jones and a third party complaint against Derrec Jones, plaintiff's son and Jones' new company, Walter Leasing and Walter Brokerage.  They make trade name infringement, unfair competition, breach of contract, tortious interference, fraud, breach of implied covenant of good faith and fair dealing, unjust

3

NOT FOR PUBLICATION

enrichment, promissory estoppel, and interference with proprietary information claims against

Paul Jones.  They also make tortious interference, breach of duty of loyalty, and interference with

proprietary information claims against third party defendant Derrec Jones.  Paul Jones and third

party defendants now move for summary judgment.  Defendant Lahanis opposes the motion.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary

judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-48, 106 S. Ct. 2505 (1986).  A factual dispute is material if, under the substantive law,

it would affect the outcome of the suit, and it is genuine if a reasonable jury could return a verdict

for the non-moving party.  See Anderson, 477 U.S. at 248.  The moving party "always bears the

initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts" in question.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986).

To survive a motion for summary judgment, the non-moving party must present "more than a

scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County of

4

NOT FOR PUBLICATION

Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The non-moving party must go beyond the

pleadings and, by affidavits or other evidence, designate specific facts showing that there is a

genuine issue for trial.  See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 323-24.  "Conclusory

statements, general denials, and factual allegations not based on personal knowledge [are]

insufficient to avoid summary judgment."  Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d

1141, 1146 (3d Cir. 1972).

At the summary judgment stage, the court's function is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and

inferences in the light most favorable to the non-moving party.  See id. at 255; Curley v. Klem,

298 F.3d 271, 276-77 (3d Cir. 2002).

## DISCUSSION

Paul Jones and third party defendants move for summary judgment contending that there

is no factual dispute regarding the validity of the contract of sale or the promissory note and that

there has been no material breach of the contract by Jones that would excuse defendants'

performance under the promissory note.  Defendant Lahanis does not dispute the movants' first

point but argues that Jones' breach and his tortious acts excuse his obligation to repay the

promissory note.  Lahanis first claims that Jones committed fraud by representing that he was

going to retire from the trucking industry.  He also contends that Jones breached the contract by

failing to stay at Bulldog for six months as agreed in the sale agreement and by failing to deliver

Bulldog free and clear of debt and liens.   Finally, he accuses Paul Jones and Derrec Jones of

NOT FOR PUBLICATION

improperly using the Bulldog name to solicit business from Bulldog's customers.  These acts

allegedly violated the express and implied terms of the sales agreement to which the parties had

agreed.  The Court takes up each contention in turn.

I.      **Fraud in the Inducement**

Lahanis first accuses Jones of fraud for representing that he was going to retire from the

trucking industry.  A contract that was induced by fraud may be deemed invalid and

unenforceable under the law.  See Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990).

The elements of fraud in the inducement are: a misrepresentation of material fact, knowledge or

belief by the defendant of its falsity, intent that the other party rely on the misrepresentation, and

reasonable reliance thereon by the other party.  See Nolan, 120 N.J. at 472 (citing Jewish Center

of Sussex County v. Whale, 86 N.J. 619, 625, 432 A.2d 521 (1981)).

Lahanis claims that both Marin and he relied on Jones' representation that he would retire

from the trucking industry following the sale in deciding to purchase the company.  That

assertion is belied by Marin's statement at his deposition that he and Lahanis had relied on the

strong revenues of Bulldog and nothing else in deciding to purchase the company.  (Milun Aff.

Ex. L at 45:22-46:12).  Even if Marin and Lahanis had detrimentally relied on Jones'

representation, Lahanis has presented no evidence for a jury to infer that Jones had made that

representation with knowledge or belief of its falsity.  It follows then that the defense of fraud in

the inducement fails.

NOT FOR PUBLICATION

## II.    Breach of Contract

Lahanis next complains that Jones materially breached the contract of sale by failing to deliver a debt-free company as warranted, continuing to commit Bulldog to financial obligations after the sale without the new owners' authorization, and failing to fulfill his obligation to serve as a consultant to the new owners following the sale.

The parties do not dispute that New Jersey law governs this dispute.  Under New Jersey law, if the terms of a contract are clear and unambiguous, the courts must enforce those terms as written.  See City of Orange Twp. v. Empire Mortgage Svcs., Inc., 341 N.J. Super. 216, 224, 775 A.2d 174 (App. Div. 2001) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960)); Levison v. Weintraub, 215 N.J. Super. 273, 276, 521 A.2d 909 (App. Div. 1987), cert. denied, 107 N.J. 650, 527 A.2d 470 (1987)).  Whether a contract provision or term is clear or ambiguous is a question of law and therefore suitable for a decision on a motion for summary judgment.  See Driscoll Const. Co., Inc. v. State, Dept. of Transportation, 371 N.J. Super. 304, 313-14, 853 A.2d 270, 276 (App. Div. 2004).  "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." M.J. Paquet, Inc. v. New Jersey Dep't of Transp., 171 N.J. 378, 396, 794 A.2d 141, 152 (2002) (citation omitted).

A material breach by either party to a bilateral contract will excuse the other party from rendering any further performance.  See Magnet Resources, Inc. v. Summit MRI, Inc., 318 N.J. Super. 275, 285-86, 723 A.2d 976 (App. Div. 1998).  However, even a material breach will not excuse performance if the party continues to take advantage of the contract's benefits.  See S&R

7

NOT FOR PUBLICATION

Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992).  When one party to a contract

believes that the other contracting party has breached the agreement, the proper course of action

is for "the non-breaching party to either stop performance and assume the contract is avoided, or

continue its performance and sue for damages."  Id.

       Defendant contends that Paul Jones materially breached the sale agreement by failing to

pay various invoices and continuing to commit Bulldog into financial obligations without

authorization.  Defendant takes issue with three leased trailers that Jones returned after the close

of the sale.  (Def. Br. at 19-20.)  Jones states, and defendant does not dispute, that he paid the

invoice related to the lease trailers in full.  (Jones Aff. ¶ 20.)  Defendant next raises a litany of

complaints, that Jones opened an E-Z pass account in Bulldog's name without authorization and

failed to pay $29.90 owing on the account, and that he let fines and penalties in the amount of

$188.84 levied by the Internal Revenue Service upon Bulldog to go unpaid.  (Def.'s Counter-

Statement of Facts ("Def. Facts") ¶¶ 80-81, 83, 93, 95.)  Jones asserts that defendants never

presented these bills to him for payment.  (Jones Supp. Aff. ¶ 2.)  Defendant also accuses Jones

of registering a trailer with the New Jersey Division of Motor Vehicles ("DMV") without

transferring the title of that trailer to the new owners.  The only evidence of this claim is a

renewal of registration notice from the DMV.  (Marin Aff. Ex. N.)  According to Jones, the

trailer was sold to White Arrow Freight before the sale of Bulldog but White Arrow never re-

registered the trailer which explains why Bulldog received the renewal notice.  (Jones Aff. ¶¶ 25-

26.)  Lahanis does not dispute this.  Lahanis also does not state how or if these alleged act or

omissions by Jones interfered with the operation of Bulldog.  He merely states, conclusorily, that

NOT FOR PUBLICATION

Jones' actions "have made it impossible for Defendants to receive the benefit of purchasing the Company, i.e., the operation of the Company in a profitable and successful manner free from pre-existing debts and liens."  (Def. Facts ¶ 97.)

Even assuming that these acts or omissions violated the term in the sale agreement which represented that "[t]he sale is free and clear of any debts, mortgages, security interest, or other liens or encumbrances" (Milun Aff. Ex. B), the breach was not material.  The total amount of the remaining invoices or bills that Jones allegedly owed was approximately $3,961.  (Def. Facts ¶¶ 90, 94-95.)  Although materiality of a breach is ordinarily a jury question, see Magnet Resources, 318 N.J. Super. at 286, there is no genuine issue for trial because no reasonable jury could find that Jones' failure to pay these amounts excuses defendant's obligation to satisfy the $350,000 promissory note.  Defendant, however, may be entitled to a setoff for the amount that Jones owed to him and Marin.

Likewise, there is no genuine dispute of material fact regarding Jones' alleged failure to serve as an unpaid consultant to Bulldog for six months.  The contract of sale obligated Jones to "provide the services of the dispatcher for six months or until the dispatcher is released from employment by the Buyers, whichever comes first or, in the alternative, Paul Jones will continue to provide his ordinary services to [Bulldog] for six months."  (Milun Aff. Ex. B.)  The dispatcher at time of sale was Derrec Jones.  (Milun Aff. Ex. L (Marin Dep.) at 44:15-17.)  Derrec Jones worked as a dispatcher for Bulldog for six months following the sale.  Paul Jones, therefore, upheld his end of the bargain by providing the services of the dispatcher for six months.  Paul Jones' service, in addition to Derrec's, was not required because the provision

9

NOT FOR PUBLICATION

regarding his services was stated clearly as an alternative to providing the services of dispatcher.

Summary judgment is granted to plaintiff on this breach of contract claim.

III.    **Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of the Duty of Loyalty and Other Tort Claims**

Lahanis accuses Paul Jones and Derrec Jones of improperly using the Bulldog name to solicit business from Bulldog's customers.  This, defendant, alleges breached the implied covenant of good faith and fair dealing.

New Jersey law implies in every contract a covenant of good faith and fair dealing obliging parties to a contract to do nothing "which will have the effect of destroying or injuring the right of the other party to receive the fruits of that contract."  See Wade v. Kessler Inst., 172 N.J. 327, 340, 798 A.2d 1251 (2002).  The implied covenant of good faith and fair dealing, however, cannot override express terms of a contract, see Sons of Thunder, Inc. v. Borden, 148 N.J. 396, 419, 690 A.2d 575 (1997), and may not "impose a condition in direct contravention of an unequivocal provision in a contract covering the identical subject."  Borbely v. Nationwide Mut. Ins. Co., 547 F. Supp. 959, 975 (D.N.J. 1981).  As a threshold requirement, a party bringing a bad faith claim must show that the other party acted in bad faith or with improper motive.  See Bruswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assoc., 182 N.J. 210, 231, 864 A.2d 387 (2005) ("an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive"); Wilson v. Amerada Hess Corp., 168 N.J. 236, 251, 773 A.2d 1121 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.").

NOT FOR PUBLICATION

The contract did not contain a covenant not to compete.  (Milun Aff. Ex. B.)  Even if the

Court were to accept defendant's argument that solicitation of Bulldog's customers is a breach of

the implied covenant, defendant has not presented any admissible evidence to show that Paul

Jones or his son committed such a breach.  Lahanis, as a "silent partner" in the business, had no

knowledge of day-to-day operations of Bulldog.  Marin's knowledge that Jones was doing work

for a customer of Bulldog is based entirely on hearsay or double hearsay and therefore his

testimony is inadmissible.  The testimony of Robert Stillwell, another dispatcher at Bulldog,

regarding Paul Jones' use of Bulldog's name is also based on hearsay.  It follows then that Jones'

statement that he was careful to avoid competing with Bulldog stands undisputed.  Because

defendant has no admissible evidence of wrongful conduct by Paul Jones let alone evidence of

his bad faith motive, the breach of the implied covenant of good faith and fair dealing claim is

dismissed.

Defendant's tortious interference with prospective economic advantage, interference with

proprietary information, unfair competition and trade name infringement claims must also be

dismissed as defendant has not produced any admissible evidence that Paul Jones

misappropriated protected trade name or information or that Paul Jones competed unfairly.

Finally, defendant has no evidence to support his breach of the duty of loyalty against Derrec

Jones.[3]  Defendant nitpicks at Derrec Jones' performance of his job but none show that Derrec

Jones disregarded the interests of Bulldog, or that he helped his father compete with Bulldog.

_____

[3]  Even if defendant had a viable claim against Derrec Jones, it would not excuse Lahanis'
obligation owed to Paul Jones under the contract of sale and promissory note.

11

NOT FOR PUBLICATION

Although Robert Stillwell states that Derrec Jones acted suspiciously, the basis of his suspicion was merely that Derrec Jones took a service call on his cell phone so that he could not be overheard.  No reasonable jury can infer based on this fact, alone or in combination with other acts, that Derrec Jones breached his duty of loyalty to his employer.  Summary judgment on these claims is granted.

## IV.    Quasi-Contract Claims

Defendant has pled two more causes of action, unjust enrichment and promissory estoppel which sound in quasi-contract.  Claims in quasi-contract cannot be maintained where a valid contract fully defines the parties' respective rights and obligations.  See St. Matthew's Baptist Church v. Wachovia Bank Nat'l Assoc., No. 04-4540, 2005 WL 1199045, *7 (D.N.J. May 18, 2005) ("[w]here there is an express contract covering the identical subject matter of [an unjust enrichment] claim, [a] plaintiff cannot pursue a quasi-contractual claim for unjust enrichment"); Winslow v. Corporate Express, Inc., 364 N.J. Super. 128, 143, 834 A.2d 1037 (App. Div. 2003) (same).  Defendant does not dispute that the contract for sale and the promissory note are valid contracts.  Unjust enrichment and promissory estoppel claims are dismissed.

12

**NOT FOR PUBLICATION**

## CONCLUSION

The motion for summary judgment is granted in its entirety.  In the absence of defenses to enforcement of the contract, Paul Jones is entitled to the amounts due under the promissory note. Lahanis may be entitled to a setoff for the amount that Jones owed to him and Marin if he offers proper proof of the invoices.


**s/William H. Walls**
United States Senior District Judge


**Appearances:**

Barry S. Guaglardi, Esq.
210 Sylvan Avenue
Englewood Cliffs, NJ 07632
       Attorney for Defendant Anthony Lahanis

Ryan Mulin, Esq.
Killian & Salisbury, P.C.
77 Brant Avenue, Suite 115
Clark, NJ 07066
       Attorney for Plaintiff Paul Jones and Third Party Defendants Derrec Jones and
       Walter Leasing and Walter Brokerage

13